## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **AHMAD ALZAIDI** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. **09-C V-2293 CM/DJW** |
| | ) |
| **U-HAUL CO. OF KANSAS, INC**., | ) |
| | ) |
| **U-HAUL INTERNATIONAL, INC.** | ) |
| | ) |
| **ALTON BIRCHELL** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT GRANTING PLAINTIFF JURY TRIAL ON SUBSTANTIVE ISSUES AND DENYING ARBITRATION

Comes now Plaintiff, Ahmad Alzaidi, and for his Memorandum in Support of the Motion for Summary Judgment shows to the court the following:

Defendant filed their Motion to Compel Arbitration in 2009 which was denied without prejudice by the Court to allow the parties to conduct discovery on the issue. Depositions of the parties and numerous fact witnesses have been completed and many of the facts are disputed, but Plaintiff is entitled to summary judgment on the matter of arbitration because of certain undisputed facts which make it clear that there is no valid arbitration agreement. Plaintiff adamantly denies ever having seen or signed an arbitration agreement. Nonetheless, Defendants produced some current employees for deposition that say they supposedly executed an online agreement. While it is interesting to note that the employees who testified they saw Plaintiff execute an online agreement, and as be discussed later, none actually signed any such agreement themselves that day.

While Plaintiff denies executing any such agreement, for purposes of this motion, Plaintiff will assume the clearly disputed fact of Plaintiff's alleged electronic execution of the document and address only the undisputed facts which entitle Plaintiff to summary judgment.

## I.       GENERAL FACTUAL BACKGROUND

Alzaidi is a dark skinned Iraqi native who became a naturalized citizen in 2003 and was employed by the U-Haul defendants from May of 2002 until his position was terminated on or about August 25, 2008.  He was terminated as retribution for raising issues regarding the disparaging treatment he received during his employment.  Plaintiff Alzaidi worked at 3200 Fairfax Trafficway, Kansas City, Kansas 66115 during his entire employment with the Defendants U-Haul Co. of Kansas and U-Haul International, Inc. (collectively hereinafter referred to "U-Haul").

During his tenure with U-Haul, Alzaidi was subjected to numerous and ongoing episodes of discrimination based upon the practice of his religion (Muslim), sex, national origin, color and race.  By way of example only, Plaintiff was assaulted and battered by supervisory personnel (Defendant Birchell was his immediate supervisor) and co-workers at the direction of supervisory personnel.  Plaintiff was even bound and gagged, had his underwear removed, was physically subjected to sexual acts being performed on plaintiff while he was held, bound and gagged.  Alzaidi was refused time to practice his religion, while others were allowed to take such action.  Plaintiff was spat on, called vulgar names in his native language and (***list other action taken against Ahmad***).  Despite Plaintiff's complaints, the actions never ceased and those actions were taken by or sanctioned by supervisory personnel.  On August 25, 2008, Alzaidi was terminated in a retaliatory action by U-Haul.

Plaintiff filed suit after taking all required steps to exhaust administrative remedies. Defendants now claim that Alzaidi agreed to arbitrate the matter.  As set forth herein, Alzaidi denies executing an agreement to arbitrate, denies seeing the arbitration agreement and the undisputed material facts as uncovered in discovery make it clear that an arbitration agreement was never executed and there was never a meeting of the minds with regard to any such agreement.

According to Defendants, there was a meeting in August of 2007 where employees were called into a room and told to electronically execute the arbitration agreement. Plaintiff, Eric Shook and Garcia adamantly deny the meeting ever occurred.  But other witnesses who are all current employees testified the meeting did occur.  The employee witnesses are wholly inconsistent with one another as to their testimony of how the meeting took place, who attended, the order of alleged signatures, time given and/or needed to review the agreement, what was told to them, who was in the room and who actually signed making it clear that none of the testimony of the current employee witnesses is valid or should be considered.  Nonetheless, while not conceding any issues, and only for purposes of the focusing on the undisputed facts in this motion, if one were to assume that such a meeting did occur and that Plaintiff did "electronically" execute any online document, the undisputed facts make it clear that there could not possibly have been any meeting of the minds because (a) the parties were not even described in the agreement, (b) Plaintiff, an Iraqi who immigrated to this country, did not have the ability to read, nor understand the agreement and was not given an opportunity to seek assistance or to take time to consider the matter and (c) Plaintiff was not given an option not to execute the agreement.

**II. LIST OF EXHIBITS**

1.      Aleo Arbitration Agreement

2.      Hanson Arbitration Agreement

3.      Hanson letter

4.      Ahmad Alzaidi Affidavit

5.      Eric Shook Affidavit

6.      Robert Aleo Deposition

7.      Susan Hanson Deposition

8.      Michael Flowers Deposition

9.      Eric Shook Deposition

10.     Alton Birchell Deposition

11.     Izadeen Ali Deposition

12.     Chuong Doan Deposition

13.     Michael Roman Deposition

14.     Johnson Nguyen Deposition

15.     Ahmad Alzaidi Deposition

16.     UHK/UHI-000187

## II.   UNDISPUTED MATERIAL FACTS

1.      That Plaintiff is able to speak English to some degree but does not understand most aspects of the English language and cannot read English except for some basic words. Alzaidi Affidavit Para., 8 and 9 and Alzaidi Deposition, p. 8 line 23 to p. 9 line 4.

2.      Plaintiff's wife reads most of the documents that he needs to see to him because he cannot read the English language other than basic words. Alzaidi Affidavit Para. 10 and Alzaidi Deposition, p. 8, line 19-22.

3.     When Plaintiff was hired in 2002, he had to fill out an application on the computer, but could not read the application so Henry Nguyen filled out the application on line for him.  See Paragraph 12 of the Affidavit of Alzaidi and quote from Eric Shook deposition Page 35, line 11 through Page 36, line 20.

4.     Eric Shook also witnessed Henry Nguyen helping Plaintiff with his application and with a test he had to take on the computer.  Shook specifically saw Henry Nguyen giving Plaintiff the answers to the machine parts test.  Shook Deposition, T., p. 36, line 21 to p. 39, line 21.  With regard to the parts test Eric Shook saw Henry Nguyen plugging answers into the parts test for Plaintiff and Henry Nguyen indicated that "we got the answers to it."  See Shook deposition, T., p. 40, line 16-25.

5.     That Plaintiff had nine years of school in Iraq, which would be similar to a ninth grade education in this country and he still needs three more years of school in Iraq to graduate but did not complete those years.  Alzaidi Affidavit Para. 15.

6.     In 2003 or 2004 Alzaidi took a class at Penn Valley Community College to try to help him with English as a second language but he failed the class and U-Haul, which fronted the payment for the class then took $1,150.00 out of his paycheck when he failed. Alzaidi Affidavit Para. 16, 17 and 18.

7.     Eric Shook was employed by U-Haul from 2002 to 2008.  Shook Affidavit Para.1.

8.     That Shook assisted Alzaidi with the human resources website through U-Haul on many occasions including inputting Alzaidi's password, and then would read to him what was said on the screen and helped him answer questions.  Shook indicated that Plaintiff tried to read the questions but he didn't understand completely so he would explain the information to him further, such as with regard to different types of health care insurance.  Shook Deposition, T., p. 42, line 25 to p. 46 line 18. .

9.      That Shook also had to assist Alzaidi from time to time with completing 24 hour leave of absence notices because Mr. Alzaidi didn't know how to spell them correctly or he didn't know how to put it down on the paper.  Shook Deposition, T., p. 49, line 1-10.

10.      Witness Doan is a citizen of the United States, and was allowed the use of an interpreter in the process of becoming a U.S. citizen.  He characterized his ability to speak English as "I'm really slow with comprehension and I cannot communicate English unless it's some minor or some easy term".  He also testified, through the interpreter, that he cannot read English.  Doan Deposition, T., p.10, line 4 to p. 11, line 11.

11.      When Doan needed help with understanding the English language at U-Haul, Mr. Johnson (referring to Johnson Nguyen), would interpret for him.  Doan Deposition T., p. 10, lines 11-13.

12.      Mr. Doan did have an interpreter with him at the examination to become a U.S. citizen in 2003.  He still does not read or speak much English.  Doan Deposition, T., p. 10, lines 2-3 and p. 12, lines 1-14.

13.      Since Mr. Doan did not read English, Johnson Nguyen interpreted the alleged arbitration agreement for him such that it was Mr. Doan's understanding "A.  As he explained it, it's a protocol requesting all of the employees to sign it in the case it ever have to go to trial or court, there will be a third party that will represent.  Q.  A third party to represent who?  A.  I was never explained who the third party was."  Doan Deposition T., p. 5, line 24 to p. 6, line 6.

14.      Exhibit 2, otherwise referred to herein as the Hanson Arbitration Agreement was given to Susan Hanson, in-house counsel for U-Haul by the administrative assistant Butch Greer, whose title is Vice President of Human Resources for U-Haul International.  The agreement was obtained from the Automated Applicant Processing System ("AAPS").  Hanson Deposition T., p. 10 lines 8-19; p. 11, lines 6-9 and Aleo Deposition T., p. 22, lines 7-8.

15.     There was no provision in the agreement that if a person needed an interpreter one would be provided for them.  There was also no deadline placed by the corporation on an employee signing it and there was nothing in the document that gave them a certain amount of time to review and consider the agreement before executing it.  Hanson Deposition T., p. 20, lines 14-23.

16.     The alleged arbitration agreement instructs the employee that "if you have any questions after reading the above summary, you should direct them to your immediate supervisor."  Hanson Deposition, T., p.  23 line 18 through p. 24, line 2.

17.     It is part of the policy of U-Haul to have supervisory personnel explain the documents.  Hanson Deposition, T., p. 24 lines 19-21.

18.     Michael Roman is the manager of the Human Resources IT Division of U-Haul International.  Roman Deposition, T., p. 6, lines 23-25.

19.     According to Mr. Roman, the internet personal action system is a system that allows people in HR to use with respect to employees and also allows hiring managers to have access to information such as a social security number, their home address and those kinds of things.  Roman Deposition, page 11, line 20 through page 12, line 6 and page 13, lines 10-14.

20.     The hiring manager also has the ability to go back in and look at the information on that system even after an employee has been hired. Roman Deposition, T., p. 13 lines 10-14, p. 15, lines 3-7.

21.     Alton Birchell was the hiring manager for Ahmad Alzaidi.  Alton Birchell testified that, acting for U-Haul, he hired Ahmad Alzaidi for Quality Control, doing essentially what he was doing for the KC Engine Shop located in the same place, only he is now a full time employee of U-Haul.  Birchell Deposition, T., p. 20, line 7-13.

22.     According to the testimony of U-Haul, the Hanson Arbitration Agreement (Exhibit 2) which does not include references to Mr. Alzaidi's employer and appeared differently in the execution area, was printed using the AAPS tool.  The AAPS tool is an attempt to "replicate what the system members saw when they signed it", which indicates that the name of the company for which the employee was working at the time was not included in the agreement at the time it was allegedly viewed on the computer system.  Roman Deposition, T., p. 33 lines 11-22.  See also Hanson Deposition, T., p. 11, lines 6-9 (Emphasis Added).

23.     Again, the name [referring to the name of the company] is missing from the AAPS reporting piece.  Aleo Deposition, T., p. 10, lines 20 through p. 11, line 7 and Hanson Deposition, T., p. 11, lines 2-9.

24.     Robert Aleo is the current Director of HR Programs and has been in that position since 2006.  Aleo Deposition, T., p. 5, line 20 to p. 6, line 1.

25.     Mr. Aleo, corporate representative of the corporate defendants, admitted that the differences between Exhibit 1 (Aleo Arbitration Agreement) and deposition Exhibit 2 (Hanson Arbitration Agreement) are as follows:    A.    The difference between one and two is the entity in which this person is employed is missing on the Hanson document.  In the signature section, the name is vacant where it says "Print Your Name" on the   Hanson document.  And the Hanson document Social   Security number is different, because the first characters of the Social Security number have been X'd out.  And the font is different on the signature name.  And the date format appears to be different." Aleo Deposition, T., p.10, line 20 through  p.11 line 7.

26.     The Plaintiff received a Welcome Aboard book from U-Haul when he was hired that had not been modified since he received a copy of the book, and there was no reference to an Arbitration Agreement in his employee handbook.  Aleo Deposition, T., p. 21, lines 17-22.

27.     Butch Greer is Vice President of Human Resources for U-Haul International. Aleo Deposition, T., p. 22, lines 7-9.

28.     The alleged Arbitration Agreement states "if that is unsatisfactory, involve the next level, perhaps the Human Resources' input.  The new policy replaces the courts and attorneys as a system of Arbitration." Aleo Deposition, T., p.  24, lines 11-16.

29.     Corporate representative, Mr. Aleo testified that it was merely a recommendation that employees execute the EDR, it was <u>not</u> a condition of ongoing employment to execute the agreement.  Bottom line, employees were not required to sign the document to have ongoing employment.  Aleo Deposition, T., p.  25, lines 7-15, line 24 through p. 26, line 1 and p. 25, line 26, p. 26, line 20-23.

30.     When an employee allegedly signed the Arbitration Agreement they would not have to put a date in, because it was recorded automatically into the system.  Aleo Deposition, T., p. 34, lines 19-24.

31.     Exhibits 1 and 2 to the Aleo deposition (Aleo and Hanson Arbitration Agreements are different in that in addition to the signature lines in Exhibit 2 makes no reference to the employer and "whatever differences are on here are incorrect", referring to the Hanson Arbitration Agreement.  Aleo Deposition T., p. 47 line 21 through p. 48, line 5.

32.     Documents such as payroll records are not signed electronically, but are signed with hand written signatures.  According to Mr. Aleo, the system was never designed to do otherwise, but the Arbitration Agreement system was designed for electronic signatures and according to Mr. Aleo, the only thing that prevented them from having Arbitration Agreements signed physically was that "logistically, it would be very very difficult to retain them and retrieve them", but when asked if that would be more difficult than retaining the timecards he did not

know if it would be difficult or not despite the fact there were many more timecards.   Aleo Deposition T., p. 58 line 4-18.

33.     Izadeen Ali, a current employee, testified that the arbitration agreement is "basically agreement is about you have to sign, you cannot go directly sue U-Haul.  You have to go -- I don't know, I forgot the name of the place.  You have to go direct to them. Then from them you can sue U-Haul if you have any problem with your company or your job or somebody in your job."  Ali Deposition, T., p. 19, lines 1-8.

34.     Defendant U-Haul's computer records ostensibly reflect that Izadeen Ali did not electronically sign his agreement on August 17, 2007 date but that he signed it 11 days later on August 28, 2007.  Excerpt from document: UHK/UHI-000187 (Exhibit 16). [Note: Plaintiff does not agree that this document is an undisputed fact but will assume the information contained therein for purposes of this Motion for Summary Judgment.]

| Sign | Date | Signature | Location | Application |
|------|------|-----------|----------|-------------|
| 6/23/06 | 11:49 AM | Michael D Flowers | 219000 | Service Center |
| 4/4/07 | 10:14 AM | Elizabeth Brambila De Bravo | 344000 | AAPS |
| 5/17/07 | 10:47 AM | Tomas J Barrera | 219000 | AAPS |
| 8/16/07 | 12:34 PM | Eric L Shook | 219000 | Service Center |
| 8/17/07 | 10:15 AM | Ahmad H Alzaidi | 219000 | Service Center |
| 8/17/07 | 10:17 AM | Kamal S Ali | 219000 | Service Center |
| 8/17/07 | 10:18 AM | Andre E Hidalgo Garcia | 219000 | Service Center |
| 8/17/07 | 10:28 AM | Chuong B Doan | 219000 | Service Center |
| 8/17/07 | 10:29 AM | Kim N Nguyen | 219000 | Service Center |
| 8/22/07 | 12:24 PM | Yusbenis G Dominguez | 219000 | Service Center |
| 8/28/07 | 9:33 AM | Izadeen A Ali | 219000 | Service Center |

35.     Michael Flowers, a current employee, testified that the agreement was "with U-Haul about lawsuits, that if we have to file any lawsuits against U-Haul that we had to talk to them first" and after talking with them you would continue the lawsuit.  Flowers Deposition, T., p. 29, lines 22-24, p. 30, line 11.

36.     Michael Flowers testified that Johnson Nguyen interpreted for Chuong Doan and Kim, who were both Vietnamese.  He testified that Johnson Nguyen read every word of the

document but not in English. He also testified that he did not think it was as long as three pages and admitted that he did not speak Vietnamese so did not know what he was saying to them. Flowers Deposition, T., p. 40, line 8 to p. 41 line 4; p. 44, line 14 to p. 45, line 2.

37.     Johnson Nguyen, another staff member, testified that he read through what was on the screen which was something about an arbitration agreement; he would read through it and then interpret for Chuong or Kim, but did it in a summary form.  Nguyen deposition, T., p. 19, line 9 to p. 20, line 4; p. 21, lines 1-3.

38.     Alton Birchell testified that, for U-Haul, he hired Ahmad Alzaidi for Quality Control, doing essentially what he was doing for the KC Engine Shop located in the same place, only he was now a full time employee of U-Haul.  Birchell Deposition, T., p. 20, line 7-13.

39.     Alton Birchell testified that when he received an e-mail or phone call from the home office in Phoenix, Arizona, he was told that the employees needed to fill out the arbitration agreement.  Birchell Deposition, T., p. 27, line 1-24.

40.     Alton Birchell testified that he was a different location on Front Street from where the other employees were located when he received instructions to have the employees sign the arbitration agreement.  Birchell Deposition, T., p. 29, line 11.

41.     Alton Birchell testified that he called Eric Shook and told him to get all the U-Haul employees gathered in his office where they could sign this arbitration agreement.  Birchell Deposition, Birchell Deposition, T., p. 38, line 20-24.

42.     Alton Birchell testified that he did not stay on the line with Eric after Eric told him he would take care of it and told Eric to call him back when he got finished and that Eric called him back and told him that everybody had read it or had it read to them and had signed it. Birchell Deposition, T., p. 48, line 2-8; p. 49, lines 7-14.

43.    Alton Birchell stated that were terms in the agreement that were not in his expertise, and described the agreement as "if there was any issues between U-Haul and an employee, that they would seek counsel through arbitrator."  Birchell Deposition, T., p. 35, lines 14-25.

44.    With respect to what items were automatically put into the "arbitration agreement," Aleo testified as follows:

> Q:    And what was the action you had to take to execute the document?
> A.    Type in your name.
> Q.    Anything else?
> A.    No.
> Q.    Did not require a Social Security number at that point?
> A.    You I.D.'d yourself when you got access.
> Q.    So the answer to my question is no?
> A.    You did not have to put in your Social Security number.  Was that the question?  The answer is, no, you did not have to.
> Q.    And you did not have to put an I.D. in and you did not have to put a password in?
> A.    Not when you signed it.
> Q.    Did you put a date in?
> A.    No.
> Q.    How was the date filled in?
> A.    The information -- because you're signed onto a system that identified you.  And it would import that automatically, the current date, the other information.
> Q.    So you're saying that somehow the computer system incorporated those things --
> A.    Yes.
> Q.    -- onto the form?
> A.    Yes.

Aleo Deposition, T., p. 34, line to p. 35, line 5.

### III. SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF PLAINTIFF

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Essentially the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson vs. Liberty Lobby, Inc.*, 477 U.S.242, 251 to 252 (1986). A party who files a Motion for Summary Judgment has the burden of demonstrating the absence of a genuine issue of material fact concerning its claims. *Celotex Corp. vs. Catrett*, 477 U.S. 317, 325 (1986). This burden may be met by affirmative evidence as referenced above or absence of evidence to support the opposing parties' claim. Once a moving party has met its burden under the rule, the opponent must show that there is more than some metaphysical doubt as to any material facts. *Matsushita Elec. INDUS. Co. vs. Zenith Radio*, 475 U.S. 574 (1986). "Where the record taken as a whole could not lead a rational tryer of fact to find for the non-moving party, there is no genuine issue for trial." *Ricci vs. DeStefano*, 129 S.Ct. 2658, 2677 (2009) (citing to Matsushita).

### ARGUMENT

Plaintiff sets forth three separate bases upon which this Court should grant Summary Judgment in favor of Plaintiff on the issue of arbitration. Any such alleged arbitration agreement which was claimed to have been electronically signed by Plaintiff under the undisputed facts of the case, cannot be enforced because (A) the parties were not even described in the agreement, and (B) Plaintiff, an Iraqi who immigrated to this country, did

not have the ability to read, nor understand the agreement and was not given an opportunity to seek assistance or take time to consider the matter and (C) Plaintiff allegedly was forced to sign the agreement that day and not given the option not to execute the agreement.

## A. Difference in the Alleged Arbitration Agreements

Again, Plaintiff adamantly denies executing an arbitration agreement, but for purposes of this motion only, will assume that fact since the undisputed facts clearly entitled Plaintiff to summary judgment regardless. The IT Director for U-Haul, who testified on behalf of the company in a corporate deposition admitted that the version of the alleged Arbitration Agreement which was printed from the AAPS System by the administrative assistant to Butch Greer, the Vice President of Human Resources for U-Haul International and given to in-house counsel Susan Hanson was a *replication of what the employee actually saw*.  (Hereinafter referred to as the "Hanson Arbitration Agreement.")  In other words, if one were to assume from the testimony of some witnesses that the meeting did occur and that Plaintiff, rather than someone else, entered an electronic signature onto an Arbitration Agreement, which was the version of the Arbitration Agreement that would have made no sense because it did not identify the parties, and would have had numerous sentences that would have made no sense whatsoever because of a failure to reference Alzaidi's primary employer, U-Haul of Kansas, Inc.

The Hanson Arbitration Agreement, which was part of an Employee Dispute Resolution ("EDR") policy, was printed from the AAPS system.  For purposes of this argument, Plaintiff will refer to the AAPS version of the Arbitration Agreement as the Hanson Arbitration Agreement (Exhibit 2 in Aleo deposition) or as the Aleo Arbitration Agreement which does contain the name of the employer (Exhibit 1 in Aleo deposition).  It should be noted that quotations from either of the two arbitration agreement makes reference to EDR policy which is synonymous with Arbitration Agreement for these purposes.

The Hanson Arbitration Agreement and the Aleo Arbitration Agreement differ in language.  The Aleo Arbitration Agreement uses the term "U-Haul Co. of Kansas" on 9 occasions.  In the Hanson Arbitration Agreement, the term "U-Haul Co. of Kansas" *never* appears.  In fact, the Hanson Arbitration Agreement never identifies the employer, one of the parties to the agreement.  Plaintiff sets below each of the omissions of the reference to U-Haul Co. of Kansas in the Hanson Arbitration Agreement as compared to the same language in the Aleo Arbitration Agreement:

1a.    Aleo Arbitration Agreement: "Effective February 20, 2006, U-Haul Co. of Kansas adopted and implemented a new arbitration policy . . ."

1b.    Hanson Arbitration Agreement: "Effective February 20, 2006, adopted and implemented a new arbitration policy . . ."

2a.    Aleo Arbitration Agreement: "It will govern all existing or future disputes between you and U-Haul Co. of Kansas or its parent, subsidiary, sister or affiliated companies or entities . . ."

2b.    Hanson Arbitration Agreement: "It will govern all existing or future disputes between you and or its parent, subsidiary, sister or affiliated companies or entities . . . "

3a.    Aleo Arbitration Agreement: "that are related in any way to your employment with U-Haul Co. of Kansas except disputes covered by the National Labor Relations Act."

3b.    Hanson Arbitration Agreement: "that are related in any way to your employment with except disputes covered by the National Labor Relations Act."

4a.    Aleo Arbitration Agreement: "The EDR applies to all U-Haul Co. of Kansas employees regardless of length of service or status"

4b.     Hanson Arbitration Agreement: "The EDR applies to all employees regardless of length of service or status . . .**"**

5a.     Aleo Arbitration Agreement: "covers all disputes relating to or arising out of an employee's employment with <u>U-Haul Co. of Kansas</u> or the termination of that employment."

5b.     Hanson Arbitration Agreement:  "covers all disputes relating to or arising out of an employee's employment with or the termination of that employment."

6a.     Aleo Arbitration Agreement: "<u>Your decision to accept employment or to continue employment with U-Haul Co. of Kansas constitutes your agreement to be bound by the EDR.</u>"

<u>6b.     Hanson Arbitration Agreement: "Your decision to accept employment or to continue employment with constitutes your agreement to be bound by the EDR."</u>

7a.     Aleo Arbitration Agreement: "that in any way arise out of, relate to or are associated with your employment with <u>U-Haul Co. of Kansas</u> or the termination of your employment."

7b.     Hanson Arbitration Agreement: "that in any way arise out of, relate to or are associated with your employment with or the termination of your employment."

8a.     Aleo Arbitration Agreement: "that are related in any way to my employment or the termination of my employment with <u>U-Haul Co. of Kansas</u>. I understand that . . ."

8b.     Hanson Arbitration Agreement:  "that are related in any way to my employment or the termination of my employment with. I understand that . . ."

9a.     Aleo Arbitration Agreement:  "I understand that, unless otherwise required by law or contract, final and binding arbitration will be the sole and exclusive remedy for any

such claim or dispute against <u>U-Haul Co. of Kansas</u> or its parent, subsidiary, sister, or affiliated companies or entities . . ."

9b.     Hanson Arbitration Agreement:  "I understand that, unless otherwise required by law or contract, final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against or its parent, subsidiary, sister, or affiliated companies or entities . . ."

It is, therefore, obvious that the omissions of "U-Haul Co. of Kansas" in the Hanson Arbitration Agreement quotes above indicate that the "agreement" **can** be modified after "electronic signing," regardless of who "electronically signed" for Plaintiff Alzaidi. Furthermore, the omissions of "U-Haul Co. of Kansas" also make the Hanson version of the "agreement" nonsensical.  It is not even clear who the parties to the agreement would be.  The quote from the Hanson Arbitration Agreement "that are related in any way to my employment or the termination of my employment with," is wholly incomplete and therefore meaningless.  How could any person read that sentence and have a meeting of the minds with another person as to what is meant by the language and who is involved in the agreement?   The answer is clear, the "agreement" as set forth in the Hanson Arbitration Agreement, which was sent to Plaintiff by in-house counsel for U-Haul and is a copy of the agreement allegedly actually seen by Plaintiff is illusory and unenforceable.  In the so-called sentence "will be the sole and exclusive remedy for any such claim or dispute against or its parent" The omission of critical terms, such as the parties' names, render the "agreement" unenforceable.

The "agreement" is also rendered ambiguous by the omitted words.  Under Kansas law, as described in the Court's syllabus in *Botkin v. Sec. State Bank*, 281 Kan. 243 (Kan. 2006), ambiguous language in a written instrument will be strictly construed against the <u>drafter</u> of the document."  Id. at 243. (See also *Amoco Prod. Co. v. Charles B. Wilson, Jr., Inc.*, 266 Kan.

1084, 976 P.2d 941, 1999 Kan. LEXIS 129, 142 Oil , &, Gas Rep. 227 (1999); and  *Liggatt v. Emplrs Mut. Cas. Co.*, 273 Kan. 915, 46 P.3d 1120, 2002 Kan. LEXIS 319 (2002)).  In this case, Plaintiff obviously did not draft the agreement as Plaintiff categorically denied ever seeing such an agreement.  Therefore, the agreement must have been drafted by someone on behalf of U-Haul and therefore must have this agreement construed against it.

Under similar circumstances, this Court (Judge Waxse) held in *Lynn v. GE,* 2005 U.S. Dist. LEXIS 5108 (D. Kan., Jan 20, 2005) in a case involving the employer's adoption of a mediation policy:

> In preparation for the implementation of the GETS RESOLVED Program on June 30, 1999, Defendant asserts GE Transportation Systems notified employees of the upcoming Program using the following methods:
>
> (1) On June 16, 1999, a letter from Human Resources Manager William Casey was sent to the home of each covered GE Transportation Systems employee and included
>
> - a copy of the GETS RESOLVED Handbook explaining the program;
> - a notification of the June 30, 1999 effective date of the program; and
> - an explanation of each employee's obligation to submit employment related claims through the first three levels of the GETS RESOLVED Program, i.e., through mediation.
>
> (2) The June 1999 GE Transportation Systems Company newsletter included an article describing the Program.
>
> (3) During the relevant time period, GE Transportation Systems provided employees with additional information regarding the Program, including a copy of the GETS RESOLVED Guidelines, on its intra-company web site.
>
> (4) During the relevant time period, Angela Walter, GE Transportation Systems Communication Specialist, drafted and sent an e-mail to all covered employees announcing and providing a link to the website.
>
> Notwithstanding the notification process implemented by Defendant, Plaintiffs maintain they
>
> (1) did not receive the June 16, 1999 letter mailed to their homes;
>
> (2) did not read the June 1999 newsletter article;

(3) did not access information regarding the Program on the intra-company web site; and

(4) did not read an e-mail regarding the Program.

*Id.* at p. 5-6.

This Court further stated that:

the first issue the Court must address is whether implementation by Defendant of . . . procedure established a valid agreement between the parties to utilize the internal issue resolution procedure.

When deciding whether the parties have made a valid agreement to participate in alternative dispute resolution, the court applies ordinary state law principles that govern the formation of contracts. With that said, if the validity of the contract at issue is an agreement to arbitrate, the agreement must be construed pursuant to The Federal Arbitration Act ("FAA"), which requires

- courts to give due regard to federal policy favoring arbitration in applying general state law contract principles
- a jury trial on the existence of a contract if the record reveals genuine issues of material fact regarding such contract.

Id. at 8-9 (footnotes omitted).

After these considerations, this Court concluded:

[t]he only evidence submitted for Court consideration on this issue are affidavits submitted by Plaintiffs swearing under oath that they did not receive the June 16, 1999 letter, did not read the June 1999 newsletter article, did not access information regarding the Program on the intra-company web site, and did not read an e-mail regarding the Program. Plaintiffs do not dispute that Defendant launched the notification process alleged; instead, Plaintiffs argue they never *received* such notice.

This scenario is dramatically different from the one presented in *Durkin*, where the evidence clearly established the plaintiff had actual notice of the policy.  In noting the relevance of such notice, the *Durkin* court cited to *Sweet v. Stormont Vail Reg. Medical Ctr*, where the Kansas Supreme Court held that "when, as in the instant case, the employee is made aware of company policy, which is a part of the terms of the employment contract, the employee will be bound by those terms."

**As a matter of law, proof that Defendant disseminated the new policy in and of itself is not sufficient to establish a binding agreement**. Defendant has

failed to controvert Plaintiffs' assertions under oath that they never read or were aware of the new policy.

*Id*. at 24-25 (emphasis added).

According to Aleo's affidavit:

"8. Once the applicant or employee completes the on-line document and submits it, it can be accessed and printed, but ***it cannot be altered***."

Affidavit of Robert Aleo, page 3 (emphasis added)

Attached to Mr. Aleo's Declaration is a copy of the EDR allegedly electronically "signed" by plaintiff (Exhibit 1).  The signature on the attachment appears as follows:

| Print Your Name | Social Security Number |
|---|---|
| AHMAD H ALZAIDI | 499119541 |

| Signature | Date |
|---|---|
| *AHMAD H ALZAIDI* | 8/17/2007 |

On or about March 12, 2009, Susan Hanson, an Assistant General Counsel "[o]n behalf of U-Haul Co. of Kansas, Inc." on letterhead from "U-Haul Legal Department, 2727 North Central Avenue, Phoenix, Arizona" wrote to counsel for Plaintiff as follows:

"I wanted to make you aware that the Company has an Employee Dispute Resolution Policy. In addition, Mr. Alzaidi signed an agreement to arbitrate any claims or disputes connected to his employment. A copy of the policy and the electronically signed agreement are enclosed for your information."

The letter from Susan Hanson is attached hereto as Exhibit 3.   Attached to the letter from Susan Hanson was the supposed EDR policy and electronic "signature" of Plaintiff.   See Exhibit 2.  As can be seen from Exhibit 2, the electronic "signature" appears as follows:

| Print Your Name | Social Security Number |
|---|---|
|  | xxxx19541 |

| Signature | Date |
|---|---|
| *AHMAD H ALZAIDI* | 08-17-2007 |

Needless to say, when comparing the electronic "signature" in Exhibit 2 provided by the office of General Counsel for U-Haul and that provided by Robert Aleo (Exhibit 1) are significantly different.  Comparison of these two documents refute the allegation that it was ever signed by Plaintiff and clearly flies in the face of the sworn statement of Mr. Aleo that "[o]nce the applicant or employee completes the on-line document and submits it, it ***can be accessed and printed, but it cannot be altered***."  Obviously, on one of the documents, the block stating "print your name" is blank.  The fonts on the signature are completely different and even appear somewhat like Arabic, as though signed by a foreign person, even those signed electronically; arguably further evidence of discriminatory treatment of Mr. Alzaidi.

The document attached to Defendants' Motion has a Social Security Number block which contains all 9 numbers of his social security number and the document sent to Plaintiff's counsel has only 5 of the 9 digits shown in the box for his social security number.  Lastly, yet another difference between the two documents can be seen in the date block on one document has dashes between the number and the other has slashes between the numbers.  The bottom line of the comparison between these two documents is that the information contained in every one of the 4 blocks in the "signature" location of each document is inconsistent with the information contained in the other document.  These distinctions clearly indicate that the documents can be manipulated and otherwise **altered** and therefore cannot be trusted.   Without question, Mr. Aleo's Declaration must be ignored or at the very least questioned as being inconsistent with facts as presented by Mr. Aleo and in-house counsel.   The program, according Aleo, automatically put the date into the document at the time it was "electronically" signed.  Aleo Deposition, T., p., 34, line 4 to p. 35, line 4.

**B.   Plaintiff did not have the ability to read and comprehend any such arbitration agreement.**

Alzaidi had little ability to read and write English and had personal knowledge that Defendant Birchell helped Alzaidi take the computer tests when Alzaidi was hired.  Plaintiff needed an interpreter for his deposition because while he speaks some English, he cannot read or write English and he certainly does not fully comprehend the English language.  Plaintiff's wife assists him with respect to any of the documents that Plaintiff needs to sign by reading those documents, explaining them to Plaintiff and generally assisting him in his overall understanding of a particular situation.

Assuming that Plaintiff did "electronically" sign an arbitration agreement, the management of U-Haul did not provide him with an interpreter as they allegedly did for two other employees, Chuong Doan and Kim Ali.  It would have been impossible for Plaintiff to comprehend the nature of the document he was allegedly signing.  In fact, those other two employees did not have the document read to them verbatim but rather had the interpreter, who was not even an employee, simply "summarize" what he thought was the most important stuff.

Even if one were to assume that Plaintiff did, in fact, set down in front of the computer and "read" the document, he was not given sufficient time within which to read the document and comprehend it.  The documents provided to Plaintiff by Defendant shows that the interval between employees allegedly electronically signing the agreement on August 17, 2007 was 1 minute, 2 minutes, 10 minutes and 1 minute.  It is clear that the 10 minute gap was to allow the interpreter to summarize the document to Chuong Doan, so the remainder of the individuals had 1 to 2 minutes to log on to computer, find the agreement, read and comprehend the agreement and the electronically sign the agreement.  Even if one believes that these employees executed an

agreement, Defendants did not provide adequate time to understand the nature and extent of the agreement.

In addition, the parties were also not "of equal bargaining power and each have had the opportunity to fully examine the proposed contract provision before the contract is executed." Plaintiff, a mere employee, reads and writes very little of the English language and never saw the "agreement". *Amoco*, *supra* at 1089.

In order to form a binding contract, there must be a meeting of the minds on all essential elements. *Sidwell Oil & Gas Co. v. Loyd,* 230 Kan. 77, 79, 630 P.2d 1107 (1981).  In the event of a mutual mistake, either of law or fact, on the terms of the contract, the contract is not binding on the parties. See *Rosenbaum v. Texas Energies, Inc.,* 241 Kan. at 301-02, 736 P.2d 888. Whether the parties agreed to arbitrate is determined by contract law.  *Heartland Premier, LTD v. Group B & B, L.L.C.,* 29 Kan.App.2d 777, Syl. ¶ 3, 31 P.3d 978 (2001).  Applying these general rules of contract law to the alleged arbitration agreement demonstrates that there was no "meeting of the minds" nor could there have been such a meeting of the minds given Plaintiff's inability to read and write the English language.

In the present case, there is also no indication of what time, if any, that Alzaidi was given to review any supposed arbitration agreement, review it with aid of counsel or a friend or an interpreter, or to revoke the agreement.  In fact, the evidence from the Defendants is that none of the employees were given a chance to have an attorney or other person review the documents with them or given sufficient time to understand the terms of the arbitration agreement.  Again, Plaintiff Alzaidi denies ever having seen, heard of or signed any arbitration agreement.

Assuming for purposes of this Summary Judgment Motion, that Alzaidi did electronically "sign" the arbitration agreement, the Court should conclude that Plaintiff did not knowingly sign any such agreement.  Alzaidi was born and raised in Iraq, speaks a very

broken English and reads and writes very little of the English language.   The agreement was written in English.   Defendants have presented no evidence that such an agreement was explained to Plaintiff and that all the terms were included in such an explanation.   Alzaidi was employed by U-Haul in 2002 and was continuously employed from May of 2002 to August 25, 2008.   During that time, Defendant Birchell was always his supervisor and was aware of Alzaidi's inability to read much English.   Despite this understanding, neither Birchell nor U-Haul put forth any evidence that someone on behalf of the company provided Alzaidi with any assistance in reading the alleged arbitration agreement, nor to read it in a language Alzaidi could read and understand such as his native Arabic.   Defendants were aware that Alzaidi would not be able to read any document such as the alleged arbitration agreement.   Alzaidi was unfamiliar with the English term "arbitration".   Alzaidi's education ended after 9 years of school in Iraq with the exception of an attempt to complete a class on a second language after becoming a citizen.    Plaintiff's employer was well aware of Plaintiff's problems with the English language.

Further, U-Haul paid for a course at Penn Valley Community College to help him improve his ability to speak, read and write English as a second language.   Unfortunately, Plaintiff failed the course because of his rudimentary understanding of the language.   U-Haul conditioned paying for the class on his passing the course and deducted the cost of the class from his next paycheck when he failed.   See, Alzaidi affidavit, paragraph 16-18.

### 1.   No Understanding of the Agreement.

Without an understanding on the part of Alzaidi, there can be no contract.   As stated by the Superior Court of Pennsylvania in *Quiles v. Financial Exchange Co*., 2005 PA Super 250, 879 A.2d 281 (Pa. Super. 2005), (a case referenced as authority by Judge Vratil in  *Lynn v. GE,* 407 F. Supp. 2d 1257, 2006 U.S. Dist. LEXIS 658 (D. Kan. 2006)):

The [trial] court also noted that Quiles was from Puerto Rico, had difficulty with the English language, had never completed high school and was unfamiliar with the term "arbitration." Under such circumstances the court determined there was no "meeting of the minds on any of the handbook terms, including the arbitration procedure." *Id*. at 8.

*Quiles*, *supra* at 284.

Here, there is also no indication of what time, if any, that Alzaidi was given to review any supposed arbitration agreement, review it with aid of counsel or a friend or an interpreter, or to revoke the agreement. In fact, there is no indication from Defendants at all of the process used to allegedly provide the agreement to Alzaidi. Again, Alzaidi denies ever having seen, heard of or signed any arbitration agreement.

Moreover, the employees who say they electronically signed the agreement do not have an understanding of the nature of an arbitration agreement. Mike Flowers believed that if you had a lawsuit against U-Haul you had to talk to them about it first and then you continue with your lawsuit. Flowers Deposition, p. 29, line 21 to p. 30, line 11. Izadeen Ali said that the agreement required that, if you had a lawsuit, you could not go directly to U-Haul, you went through this other place and from there you could sue U-Haul. Izadeen Ali Deposition, p. 9, line 1 to 8. Chuong Doan, on the other hand, said that it was a protocol requesting all the employees to sign it in the case it eve have to go to trial or court, there will be a third party to represent someone, but the third party was never explained to him. Doan Deposition, p. 6, lines 1-8. Finally, even Alton Birchell, the head of the company in Kansas City admitted that he did not understand all the words used in the agreement. Birchell described the arbitration agreement "that if there was any issues between U-Haul and an employee, that they would seek counsel through arbitrator." Birchell Deposition, T., p. 35, lines 14-25. Amazingly enough, the arbitration agreement and U-Haul policy was for employees with questions about the arbitration policy to direct the questions to their supervisor, without making sure the supervisors understood the agreement.

Bottom line, Alzaidi was supposedly told he needed to sign the agreement that day, without having time, counsel or an interpreter to assist in review of the document, was not told he could choose not to sign the agreement and then told he should direct questions to his supervisor, Alton Birchell, who was not in the building and did not understand the agreement himself and when Plaintiff had supposedly been directed to execute the agreement. Simply stated, there was no understanding of this arbitration agreement even by the employees who claimed they signed it or the manager to whom questions were to be directed.

Defendants have previously cited *Lynn v. GE*, 407 F. Supp. 2d 1257 (D. Kan. 2006) in support of their claim for arbitration. In that case, based upon obviously differing facts, Judge Vratil concluded, that the arbitration agreement was enforceable because:

> Here, the separation agreement clearly stated that Campesino agreed to submit to final and binding arbitration. **He read the provision**. He realized that the Handbook was not attached, but he made no attempt to obtain a copy of the purported agreement. **The arbitration guidelines were posted on defendant's website, and plaintiff acknowledged that he had received, reviewed and agreed to them.** Campesino **had 21 days to review the agreement and consult with counsel before signing it.** Even after signing, **he could revoke within seven days.** On these facts, the Court concludes that Campesino had more than ample opportunity to review and understand the implications of the arbitration clause within the separation agreement.

*Id*. at 1262-63 (emphasis added).

Similarly, in *Durkin v. CIGNA Property & Cas. Corp*., 942 F.Supp. 481, 487-88 (D. Kan. 1996), the Court held that a policy is enforceable when the employee has actual notice of said policy. The employee had actual notice of a company policy in Durkin, and thus the employee was bound to that policy. Judge Lungstrum held:

> [m]oreover, the evidence establishes that plaintiff had **actual notice** of the policy. "When, as in the instant case, the employee is made aware of company policy, which is a part of the terms of the employment contract, the employee will be bound by those terms." *Sweet v. Stormont Vail Reg. Medical Ctr.*, 231 Kan. 604, 611, 647 P.2d 1274, 1280 (1982).

*Id.* at 488 (emphasis added).

Unlike the facts in *Lynn* or *Durkin*, the facts in the present case are substantially different.  Plaintiff denies ever having seen, heard of or signed any arbitration agreement. Further, the policy, as described in the EDR did not provide for any opportunity to review the policy, reject the policy or retain advice or the services of an interpreter. Simply stated, in the present case there is no agreement to arbitrate.

### 2.        Agreement is illusory

Defendant's Motion presupposes there are no other policies of U-Haul which may make the supposed arbitration agreement illusory.  In *Dumais v. American Golf Corporation*, 299 F.3d 1216 (10th Cir. 2002), the Court stated:

> One section of the Handbook declares that American Golf "reserves the right to at any time change, delete, modify, or add to any of the provisions contained in this handbook at its sole discretion," with the exceptions of Appellee's employment-at-will status and the arbitration provision. Aple. App. at 58. However, on the page of the Handbook where the employees sign which acknowledges that they read and understood the Handbook's provisions, American Golf reserves the right to amend, supplement, or revise everything in the Handbook with the exception of employees' at-will status. *Id.* at 66. The Handbook also states, "This Co-Worker Alliance is my personal agreement of employment with [American Golf]. I understand that this handbook supersedes any and all prior handbooks." *Id.* at 58.

*Id.* at 1217.  The Court in *Dumais* further held that the ambiguity must be interpreted against the drafter (the employer) and therefore found the "agreement" did not exist.

Similarly, here, if there was an online document seen by a person with Plaintiff's SMID, password and SSN, there is no proof of which document actually seen by such person.  There were two documents forwarded by counsel for Defendants which are inconsistent and the EDR sent by Hanson is wholly illusory.  Sentences appear incomplete (because of the missing words "U-Haul Co. of Kansas) and therefore there can be no agreement.  The terms in the Hanson Arbitration Agreement clearly demonstrate there could be no meeting of the minds.  It is

confusing and illogical and does not even clearly identify who the parties were intended to be. The Hanson Arbitration Agreement is wholly illusory and unenforceable.

When Plaintiff was first hired, he was provided with a Handbook (Welcome Aboard) from U-Haul that was put together by the Human Relations Department of the company.  At the time of his deposition in January of this year, Robert Aleo conceded that the Handbook provided to all of its employees regarding the various policies and benefits of the company does not contain any reference to an arbitration agreement.  His testimony was as follows:

> Q.    Is it a book that's put out by HR?
> A.    Yes.
> Q.    And you're in the HR department?
> A.    Yes.
> Q.    And your position, if I recall, is HR programs?
> A.    That's correct.  Uh-huh.
> Q.    If we look at Page 88, there's a date on the bottom.  I think it says 9 of '95.
> A.    What is your question?
> Q.    Is that the date, 9 of '95?
> A.    Yes.
> Q.    So would that be the addition of the Welcome Aboard book?
> A.    I guess that would be an addition.
> Q.    And has that been modified since Mr. Alzaidi received his copy of the book?
> A.    I don't believe so.
> Q.    Is there any reference anywhere in the Welcome Aboard book to an Arbitration Agreement?
> A.    No.

Aleo Deposition, page 20, line 25 to page 21, line 22.

**C.    Management Misrepresented that Signing Agreement Was Mandatory.**

According to Alton Birchell's testimony Birchell told Eric Shook, that all the employees must sign it that day and called back to make sure all had, in fact, signed it.  However Defendants' corporate representative stated that every employee had the option of *not* signing this arbitration agreement and that it was not mandatory.  In the case of the Kansas City office, not one employee, who has given testimony, stated that they were told it was not required or they

Page 28

could choose not to sign it.  In fact, the opposite is true; each employee indicated that it was their understanding that this document on arbitration needed to be signed that very same day.  According to those same witnesses, it was the reason each employee was required to go into Eric's office and electronically sign the agreement.  Not one employee mentioned anything that could remotely be construed to say that an employee had any option as to whether or not to sign this arbitration agreement.

In his deposition on behalf of the corporation, Mr. Aleo testified as follows:

Q.      And so when U-Haul of Kansas implemented it, they implemented it as a recommendation.  Correct?
A.      That's correct.
Q.      It was not a condition of ongoing employment?
A.      It's a condition of employment to adhere to the policy, but it wasn't required that you sign it.
Q.      Were the employees required to sign the document to have ongoing employment?
A.      No.

Aleo Deposition, p. 25 line 10 through p. 26, line 1.

Despite this position taken by the corporations, it is clear under any version of the undisputed facts on this issue, that no employee, including Plaintiff, was given any option not to sign the arbitration agreement.  Defendants violated their own policy with respect to whether or not an employee must sign the arbitration agreement, and therefore, this Court should not enforce arbitration upon Plaintiff.

Defendants are put into the curious position that while its employees believed they had to sign the arbitration agreement and do as instructed by Alton Birchell on the same day, the corporations, through their representative, claim that signing the agreement was purely voluntary and had no affect on the employee's continued employment.  The language of the arbitration agreement (under either version) states that: "**Your decision to accept employment or continue employment (with U-Haul of Kansas) constitutes you agreement to be bound by EDR.**"

This language appears to make continued employment contingent upon signing the agreement, despite the corporate policy that the agreements were only voluntary.  U-Haul is either negligently misrepresenting the company policy as to whether signing an arbitration agreement is mandatory or fraudulently misrepresenting the mandatory nature of the agreement.  *See*, *Mahler, v. Keenan Real Estate, Inc.*,  255 Kan. 593; 876 P.2d 609; 1994 Kan. LEXIS 96 (1994) (One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information).  *See also*, *Smith v. Stephens*, 23 Kan. App. 2d 1013, 940 P.2d 68, 1997 Kan. App. LEXIS 94 (1997) (Fraudulent misrepresentation involves an untrue statement of material fact, known to be untrue, made with the intent to deceive or with reckless disregard for the truth, and upon which another party justifiably relies to his or her detriment).

Certainly, Defendants should not be permitted to force an arbitration agreement which none of the employees understood and of which the Defendants took opposing positions on whether it was mandatory and whether the employees were given a fair opportunity to review. At the very least, the ambiguous language of the written document as opposed to the corporate policy requires that the document be strictly construed against its drafter.  *Botkin v. Sec. State Bank*, 281 Kan. 243 (Kan. 2006).

According to the Defendants' witnesses, Plaintiff and all employees had no choice to but to sign the agreement on that day and were put under duress to do so immediately without the ability to have it reviewed by someone else and without being told that they could choose not to sign it at all.  The agreement states that the employee's continued employment was conditioned upon signing the agreement.  The duress under which these agreements were allegedly signed

makes them not voluntary and therefore invalid.  *See*, *Reynolds v. Armour & Co.*, 149 Kan. 460, 87 P.2d 530 (1939)**.**

Bottom line, the employees who allegedly executed the agreement did so because they were told that they were required to do so, and yet the policy of the company is just the opposite. Defendant Birchell required the execution of the agreements through duress, despite corporate policy to the contrary.

## IV. ADDITIONAL FACTS

Plaintiff is entitled to Summary Judgment based upon the above referenced facts and arguments.  The other facts in the matter are hotly contested and are not ripe for Summary Judgment, for example, the parties vehemently disagree whether or not Plaintiff ever saw or even attempted to execute an Arbitration Agreement.  The parties disagree as to whether or not a meeting took place at the office of U-Haul on August 17, 2007.  Plaintiff and Eric Shook testified that the meeting never took place while several other current employees, the vast majority of whom did not sign the Arbitration Agreement that day, indicate that there was a meeting at which they either signed or attempted to sign their agreement.

Alton Birchell testified that he was on the phone with Eric but did not remain on the phone when the other employees allegedly gathered.  Other employees say that Alton Birchell was on the line with them.

Witness Johnson Nguyen, who testified that no one else was in the room besides him, Eric Shook and the persons for whom he was interpreting at the time of the agreement.  His testimony was that the employees waited out in another room but did not remember the order of the employees.  Several of the other employees testified that all the employees were in a single room at the time.  According to Witness Izadeen Ali, the Arbitration Agreements were signed or signed in the following order:  his cousin Kamal Ali, then Andrea Hidalgo Garcia second,

Plaintiff third, Izadeen Ali fourth and Mike Flowers last.  Michael Flowers testified that Ahmad Alzaidi went first; Kamal Ali went second, Chuong Doan went third, Kim went fourth; Izadeen Ali went fifth and Michael Flowers went last.  And, according to Chuong Doan, he went third after Michael Flowers and DC Day (Izadeen Ali).  All this in the face of the testimony for Affidavit Statement from Plaintiff, Eric Shook and Andrea Hidalgo Garcia, all of which who are not longer employed with U-Haul, indicating that "meeting" never took place.

Bottom line, the facts are hotly contested as to whether or not Alzaidi ever saw or even attempted to execute an Arbitration Agreement.  However, as referenced above, if you assume for purposes of this Motion that the agreement was executed on August 17, 2007 as claimed by the Defendants, Plaintiffs are nonetheless entitled to Summary Judgment as set forth herein.

## V. CONCLUSION

As set forth herein, Plaintiff is entitled to Summary Judgment based upon the undisputed facts that in the alleged Arbitration Agreement, the parties were not even described, Plaintiff did not have the ability to read or understand the agreement and was not given an opportunity to seek assistance, and Plaintiff was forced to sign an agreement without ever being told that it was optional and that the language in the agreement itself was inconsistent with the company policy. Therefore, Plaintiff is entitled to Summary Judgment finding that there was no arbitration agreement between the parties and ordering the matter to proceed on the underlying substantive claim of the Plaintiff for the violations of the Equal Opportunity Act and corollary Kansas Act as well as all other claims set forth in Plaintiff's Petition.

KUHLMAN, REDDOCH, & SULLIVAN P.C.

BY/s/ Scott J Sullivan
     SCOTT J. SULLIVAN  #14365
     1201 West College, Suite 200
     Liberty, Missouri  64068
     Telephone:  (816) 781-3700
     Fax:  (816) 781-9048

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

     The undersigned certifies that a true and correct copy of this document was filed, on this 2nd day of April, 2010, via the court's CM/ECF filing system, which electronically served notice on the following:

     Michael L. Blumenthal, KS #18582
     Julie W. O'Dell, KS #20192
     Courtney Anne Hasselberg
     SEYFERTH BLUMENTHAL & HARRIS LLC
     300 Wyandotte, Suite 430
     Kansas City, MO 64105
     Phone: (816) 756-0700
     Fax: (816) 756-3700
     Email: julie@sbhlaw.com
     ATTORNEYS FOR DEFENDANT U-HAUL
     CO. OF KANSAS, INC.

     and

     Mark J. Galus
     GALUS LEGAL LLC
     PO Box 140203
     Kansas City, Missouri 64114-0203
     (816) 729-5725 (phone)
     galus@galuslegal.com (e-mail)
     ATTORNEY FOR DEFENDANT
     ALTON BIRCHELL

     /s/ Scott J Sullivan
     Scott J. Sullivan, Attorney for Plaintiff